UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
HECTOR LOPEZ, et al.,

                       Plaintiffs,         11 CV 2607 (CBA) (RER)

      -against-

THE CITY OF NEW YORK, et al.,         **DECLARATION OF COUNSEL**

                       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        MICHAEL LUMER, an attorney admitted to practice before this Court, pursuant to 28 U.S.C. § 1746, hereby declares and affirms under penalty of perjury as follows

        1.      I am counsel to the firm Reibman & Weiner ("R&W"), the attorneys for the plaintiff Darnell Blount in this action. I submit this declaration in support of the plaintiff's motion for legal fees, costs and expenses, pursuant to Fed. R. Civ. P. 54 and in accordance with the terms of the judgment that was entered in favor of plaintiff against the City of New York, Elvis Merizalde, and Rosemarie Harty, on February 29, 2012.

        2.      The motion is being now, without a pre-motion conference, in order to comply with the time limitations imposed by Fed. R. Civ. P. 54(d)(2)(B)(i), which requires that a motion for fees and costs be filed "no later than 14 days after the entry of judgment."

        3.      For the reasons articulated below, plaintiff is requesting reimbursement in the amount of $26,352.50. This figure is based on the undersigned having expended more than 61 hours, at an hourly rate of $425, plaintiff having incurred $130.00 in costs and expenses. Plaintiff reserves the right to supplement this request in his reply to include the time expended in the making of this motion.

## Counsel's Background and Rate

4. I attended Brooklyn Law School as a Richardson Merit Scholar, graduating in May 1995. I was awarded an Edward Sparer Public Interest Fellowship, and served as a member of the Brooklyn Law Review, where I was also a Notes and Comments Editor.

5. I was admitted to practice in the State of New York in May 1996. In July 1996, I was admitted in the United States District Courts for both the Eastern and Southern District. I was admitted to the United States Second Circuit Court of Appeals in November 1999. I have an extensive background in the area of civil rights law, and began my career in the area of criminal defense, primarily in federal cases.

6. I have appeared as counsel of record in well over 150 cases in the Eastern and Southern Districts of New York, as well as in hundreds of matters in state court. I have briefed and argued many appeals before the Second Circuit Court of Appeals and have also successfully appeared before the New York State Appellate Division.

7. In short, I have considerable experience in civil litigation generally, and in the area of civil rights in particular.

8. My current hourly rate is $425, which the City has tacitly conceded is fair, reasonable and appropriate in light of my experience and the prevailing rates in the Eastern District of New York. As discussed in the accompanying memorandum of law, this rate is within the range of reasonable rates approved by this Court in the context of fee applications.

9. Notably, the City of New York has never disputed my hourly rates in post-settlement negotiations in other matters, which normally result in settlements at or close to our fees at our regular hourly rates.

10. Indeed, the issue of my hourly rate was squarely presented last year in a fee application in *Blount v. City of New York*, 11 CV 124 (BMC) following plaintiff's acceptance of an Offer of Judgment. The City of New York opposed the application, but did not challenge my rate. On August 11, 2011, the Hon. Brian M. Cogan issued an order upholding my request for fees in its entirety, finding that my hourly rate was reasonable.

11. In the *Blount* case, R&W submitted a fee request based on my hourly rate of $425. The City filed opposing papers limited solely to their request that my fee be limited to an amount they claimed I had previously offered to accept during pre-motion negotiations. At no point did the defendant argue that either the rate or my hours were excessive in any way.

### The Time Expended Was Reasonable and Necessary

12. As set forth in my time records, which are annexed hereto as Exhibit 1, I expended at least 61.7 hours on behalf of Hector Lopez in this matter. I say "at least" because there were many additional internal conferences within my firm, as well as telephone calls and correspondence between myself and the Mr. Lopez that were not properly memorialized and therefore are not included in this request.

13. Similarly, my associate, Jessica Massimi, Esq., was involved in certain

research projects, was present for at least one court conference, and participated in conferences with me and discussions with me defense counsel. Our paralegal also expended time attempting to obtain Mr. Lopez's records and engaging in correspondence with the Comptroller's Office, but did not properly record it. Accordingly, although I know with certainty that these events occurred, we have not requested payment for her time.

14. We are also seeking $130 in costs and expenses, which constitute one-third of the $390 R & W advanced in recoverable costs and expenses up to the date of plaintiff's acceptance of the Rule 68 Offer of Judgment. These consist of $350 to file the action, and $40 to pay for service of process. These costs were critical and necessary to the commencement of the litigation. Hard copies of the underlying receipt and invoice can be produced if there is any dispute to the authenticity of the charge.

15. The amount of time spent on this matter through the defendants' service of an Offer of Judgment on December 21, 2011, was reasonable and necessary.

16. The underlying facts of the arrest, which occurred on March 1, 2010, are relatively straight forward. Mr. Lopez briefly double parked on Fourth Avenue in Brooklyn, New York, to let his mother out so she could go into her mother's building. The defendants pulled up behind and directed plaintiff to pull up to the curb, which he did, following which defendant Merizalde issued plaintiff a ticket for double parking. Mr. Lopez responded to the issuance of the parking ticket by sarcastically clapping and thanking the officer. Merizalde responded by forcefully arresting plaintiff. He was handcuffed and removed from the scene by the defendants.

17. The defendants then returned to the scene and arrested Ms. Concepcion and Ms. Perez. According to the defendants, these plaintiffs had attempted to interfere in the arrest and caused damage to Merizalde's uniform. Having forgotten to arrest the women, Merizalde had the presence of mind to return and seize both plaintiffs.

18. The plaintiffs were prosecuted for about a year. Finally, in March 2011, the plaintiffs accepted Adjournments in Contemplation of Dismissal, and the prosecution was brought to a close.

19. The simple nature of the case notwithstanding, this case has engendered a disproportionate amount of litigation, virtually none of which was caused or initiated by plaintiff.

20. As the record will bear out, the defendants were insisting that the terms of the proposed protective order be materially changed from terms the Law Department had previously agreed to in other cases. This led to a protracted argument and then motion practice, and eventually a decision by Magistrate Judge Reyes to enter plaintiff's version of the protective order.

21. Similarly, the defendants insisted on pursuing a motion to dismiss against Lopez, leading to more litigation. Eventually the Court allowed plaintiff to amend the pleading. While the defendants again sought to challenge the pleading, they issued the Rule 68 before making their last motion to dismiss.

22. Put simply, every single step in this litigation has been challenged and fought. As the Court may recall, on January 11, 2012, I asked for a very short enlargement

of time to submit papers in opposition to the defendants' motion to dismiss. Much to my surprise, the defendants actually filed a letter in opposition. This occurred after Mr. Lopez's acceptance of the Offer of Judgment, and so the time at issue is not before the Court. However, it is emblematic of the contentiousness of the litigation, which has forced us to expend more time than we might have done otherwise.

23. Thus, since our initial conference in September 2011, we have engaged in discovery exchanges, litigation and research over defendants' motion to dismiss, motion practice over the protective order, preparation for a failed settlement conference, and a host of lengthy and time consuming communications.

### Conclusion

24. For the reasons set forth above and in the accompanying memorandum of law, plaintiff' requests that the Court issue and order that his request for legal fees, in the amount of $26,352.50, and costs and expenses of $130, for a total of $26,352.50, be granted in its entirety.

Dated: Brooklyn, New York
      March 14, 2012

                                      Respectfully submitted,

                                      /s/
                                      _____
                                      Michael Lumer (ML-1947)